**UNITED STATES of America ex rel. Samuel WOODS, Jr.,**

v.

**Alfred RUNDLE, Supt.**

**Civ. A. No. 70–2681.**

United States District Court, E. D. Pennsylvania.

April 21, 1971.

Samuel Woods, Jr., pro se.

Stewart J. Greenleaf, Asst. Dist. Atty., Montgomery County, Pa., for respondent.

## OPINION AND ORDER

HANNUM, District Judge.

Presently before the court is a petition for writ of habeas corpus in which relator, Samuel Woods, Jr., attacks his convictions for burglary, robbery, armed robbery and assault and battery, No. 223, February Term, 1968, Criminal Actions 390–391, and No. 224, February Term, 1968, Criminal Actions 384–386, Court of Common Pleas, Criminal Division, Montgomery County, Pennsylvania.

The grounds upon which relator contends that his present incarceration is unlawful are: (1) that the in-court identifications by the robbery victims were based upon identifications of relator made at a pretrial lineup when relator was unrepresented by counsel; (2) that the trial court improperly commented in its charge upon relator's failure to testify; (3) that his conviction by a jury composed of less than twelve persons denied him both due process and equal protection of the law; and (4) that the testimony surrounding the pre-arrest photographic identification of relator "appraised the jury of his prior [criminal] record and violated his rights thereby".

Two separate events form the basis for the offenses of which a jury found relator guilty. Both events involve the burglary of gasoline service stations and the armed robbery of attending personnel. The first service station robbery occurred on January 19, 1968, and the second occurred on February 16, 1968.

The evidence at the pretrial hearing on defendant's motion to suppress the identifications established that on Saturday, February 17, 1968, the day following the second service station robbery, a Springfield Township police official took approximately one hundred and fifty (150) photographs to the service station where the three robbery victims each separately examined them for possible identification of the individual who had perpetrated the burglary and robberies. Each separately identified a 1963 photograph of the relator, although two of the robbery victims weren't positive.

The investigating officer thereafter obtained on Monday, February 19, 1968, from the Philadelphia Police Department a more recent photograph of relator taken on December 12, 1967. On Tuesday morning, February 20, 1968, the investigating officer placed this photograph among a group of approximately 25 to 30 other photographs and again proceeded to the service station for the purpose of determining whether the three robbery victims could possibly identify the person who had robbed them. Again each separately examined the group of photographs and each separately made a positive identification of relator as the robber in question.

On February 21, 1968, a warrant was issued for the arrest of relator for the second service station burglary and the robbery of the three attendants. On the same day, relator was arrested, warned of his rights and, in fact, executed a "waiver of rights" form.

On February 22, 1968, a lineup was held at the Springfield Township Police Station. The lineup consisted of relator and two other individuals. All of the three men were of the same racial background, general age and physical characteristics. It also appears from the photograph that was taken of the lineup that each was dressed in such a manner that it could not be said that any particular one was unduly and suggestively highlighted.

Each of the three robbery victims from the second service station separately viewed the lineup and again each separately identified relator as the person who had robbed them.

Because of the similarities between both service station robberies, one of the investigating officers requested the robbery victim from the first service station robbery to come to the police sta-

tion to determine if he could identify the individual who had robbed him. He also separately viewed the three individuals in the lineup and immediately and positively identified relator. The robbery victim also stated that while he recognized one of the other men in the lineup as a friend with whom he had previously attended school, he had no knowledge that he was to be in the lineup. Moreover, the police had no prior knowledge of the acquaintance.

 While there is some question as to whether relator knowingly and intelligently waived his right to counsel at the lineup, the court need not even discuss it, for it is clear from this record that the pre-arrest photographic identifications of relator by the three robbery victims of the second service station robbery established a sufficiently independent source to subsequently permit them to identify relator in court as the perpetrator of the burglary and robberies. The pre-arrest display of photographs was perfectly proper and conducted in such a manner as to indicate a total absence of suggestiveness. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970); United States ex rel. Oliver v. Commonwealth of Pennsylvania, 321 F. Supp. 192 (E.D.Pa.December 28, 1970).

It is also clear from the facts contained in the record that in-court identification of relator by the victim of the first service station robbery was based upon a source that was sufficiently independent from the observation made at the lineup. In support of this it appears that the robbery itself occurred only approximately one month prior to the lineup; the victim spoke with and observed the robber for approximately ten (10) minutes during the course of the robbery; there had been no prior failure to identify relator as the robber; and the identification of relator at the lineup was both immediate and positive.

Although relator did not have counsel at the lineup, it appears from the photograph taken at the lineup and the testimony concerning the manner in which the lineup was conducted that it was fair and free from undue influence or suggestiveness. *Cf.* United States v. Wade, *supra;* United States v. Shannon, 424 F.2d 476 (3d Cir. 1970); United States v. Conway, 415 F.2d 158 (3d Cir. 1969).

The court has carefully reviewed each of relator's other contentions and the portions of the state court relevant to each and has concluded that they are likewise clearly without merit.

Accordingly, relator's petition will be denied.